IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL McLAUGHLIN : | CIVIL ACTION |
| : | |
| Plaintiff, : | |
| : | |
| v. : | NO. |
| : | |
| THE BOROUGH OF BRIDGEPORT, : | |
| PENNSLVANIA : | JURY TRIAL DEMANDED |
| : | |
| Defendant. : | |

COMPLAINT

NATURE OF THE CLAIM

1.      In this action, Plaintiff, Paul McLaughlin, a male police officer employed by the Borough of Bridgeport, ("Bridgeport" or "Defendant") seeks to recover damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, the Pennsylvania Human Relations Act, Act 222 of 1955, P.L. 744 as Amended through June 25, 1997 by Act 34 of 1997, P.L. 326, 43 P.S. §§ 951-963 ("PHRA") and at common law. This was all caused by Defendant's unlawful employment practices in retaliating against Plaintiff for associating with and supporting fellow patrol officer Shannon Sell in opposing Defendant's hostile environment of discriminatory practices directed against her on account of her sex.  Plaintiff has been adversely affected by

1

Defendant's unlawful employment practices in that he has been retaliated against and deprived of career advancement by Defendant and its agents.

## PARTIES

2. Plaintiff, Paul McLaughlin ("Plaintiff"), is an adult, Caucasian male person who resides in Montgomery County, Pa. 19403.

3. Defendant Borough of Bridgeport, Pa. is a borough with an address of 65 West Fourth Street, Bridgeport, PA 19405 also located in Montgomery County, PA 19405 and exists pursuant to Pennsylvania's Borough Code, Act of Feb 1, (1966), P.L. 1656, No. 581 as amended.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims for relief under 28 U.S.C. §§1331, 1337, and 1343, since those claims are based in part on violations of Section 706 (f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1).

5. Jurisdiction is also invoked pursuant to 28 U.S.C. §1367, granting this Court supplemental or pendent jurisdiction over state claims under the laws of Pennsylvania, including the PaHRA and Pennsylvania common law, because the state claims and federal claims are so interrelated that they are the same case or controversy under Article III of the United States Constitution.

6. This action is brought after timely dual filing of questionnaires and charges by Plaintiff with the Pennsylvania's Human Relations Commission ("PaHRC") and the U.S. Equal Opportunity Commission ("EEOC") commencing on or about November 24, 2014. Plaintiff's case at the EEOC was assigned Charge No. 530-2015-0105. This action has been filed within ninety days from Plaintiff's subsequent receipt of a "right to sue letter" dated May 26, 2015.

7. The proper venue of this action under 28 U.S.C. Section 1391 (b) and (c) is in this Court, as Plaintiff and Defendant are located within Montgomery County, Pennsylvania, all within the judicial district comprising the Eastern District of Pennsylvania.

**BACKGROUND FACTS**

8. The Borough of Bridgeport's Borough Code established a police department. (Ordinance No. 414, approved 8-15-1975 (Ch. 28, Art. I of the 1975 Code). It specifically provides that "The Chief of Police shall be the chief executive of the Police Department. He shall, under the direction of the Mayor, be in charge of the police force and have supervision over its members in the exercise of their powers, duties and authority." (Section 89-1.) . Classifications as to those subordinate to the Chief of Police and their priority in order are the responsibility of Borough Council. (Section 89-2). At all times pertinent to this action, John Dougherty was Bridgeport's Chief of Police until his resignation which was effective June 26, 2015.

9. Rules and Regulations have been promulgated for the Bridgeport Police Department providing in pertinent part as follows:

-The "LAW ENFORCEMENT CODE OF ETHIC" stresses that the law enforcement officer "WILL BE EXEMPLARY IN OBEYING THE LAWS OF THE LAND."

- The "STATEMENT OF POLICY METHODS TO ENFORCE THE LAW" states that "THE OFFICERS OF THIS DEPARTMENT CANNOT AND WILL NOT DISCRIMINATE IN THE APPLICATION AND ENFORCEMENT OF THE LAWS OF THIS COMMONWEALTH."

- The section entitled "INTERACTION WITH PEOPLE" relies on the "GOLDEN RULE" and states that "EACH PERSON SHALL BE TREATED FAIRLY,

MEANING IMPARTIALLY AND HONESTLY, WITHOUT SELF- INTEREST, PREJUDICE OR FAVORITISM. THEY SHALL BE TREATED EQUALLY, MEANING IN AN IDENTICAL MANNER AS OTHERS, WITHOUT BIAS. THEY SHALL BE TREATED WITH RESPECT, DECENCY AND COURTESY, GIVING THEM THE SELF-ESTEEM DUE TO ANY PERSON, IN ANY SITUATION."

- Section 1.05 thereof provides that "EMPLOYEES SHALL OBEY ALL LAWS OF THE UNITED STATES, COMMONWEALTH OF PENNSYOLVANIA AND THE LOCAL JURISDICTION. A VIOLATION OF ANY LAW SHALL BE CAUSE FOR DISCIPLINARY ACTION."

10. General Order #2013-001 dated January 8, 2013 sets forth the Bridgeport Police Department's Equal Opportunity and Anti- Harassment Policy. This General Order was a direct result of prior discrimination and retaliation complaints brought by Plaintiff and Officer Shannon Sell. It provides in pertinent part:

- that the Police Department is "an equal opportunity employer and is fully committed to equality in employment and opportunity for all employees";

- that "The Department will endorse, actively support and implement equal opportunity in all phases of the personnel function, including recruiting, hiring, training, promoting, layoffs, discipline, termination, benefits, social and recreational programs, salary administration, and all other privileges, terms and conditions of employment";

- that sexual and other forms of unlawful harassment "will not be tolerated" and that "all employees should be able to enjoy a work environment free from all forms of unlawful discrimination and unlawful harassment…..";

-that "It is a violation of this policy to retaliate against any employee because the employee has truthfully made a complaint or statement of unlawful discrimination or harassment. It is also a violation of this policy to retaliate against any employee who has cooperated, assisted or provided a written or verbal statement during the course of the investigation conducted by the Department. If any employee feels that he or she has been retaliated against for lodging a complaint or assisting in an investigation conducted by the Department, he or she should report such incidents of retaliation to the Chief of Police, the Mayor or the Borough Manager."

11. Plaintiff was initially employed as a patrolman for the Borough of Bridgeport's Police Department on June 1, 1999 and has been continuously employed since then.

12. Things changed radically for Plaintiff when Bridgeport's small police force was no longer an all-male club when Ms. Shannon Sell came on onto the force March 1, 2010. In contrast to the other male officers, Plaintiff was willing to assist her and train her as he was able.

13. Prior to the claim referenced earlier herein, Plaintiff filed an initial retaliation claim with the Pennsylvania Human Relations Commission, dual filed with the EEOC, against the Borough for retaliation on account of his support of Shannon Sell's rights as a female to be a member of the force without discrimination or a hostile environment.

14. On or about January 3, 2013, a Settlement Agreement of that initial retaliation claim was effectuated by and between Plaintiff and the Borough, which in pertinent part provided that the Borough confirmed that it would not retaliate against him. As part of the Settlement Agreement, the Borough stated that all civilian and police related personnel had undergone sexual harassment/sensitivity training and had been advised that sexual harassment, rumor-mongering or retaliation would not be tolerated. A new anti-discrimination policy was to provide

that engaging in harassment and retaliation towards other employees would result in disciplinary consequences, up to and including dismissal.  As a member of the police force, not to mention a signatory to the Settlement Agreement, Plaintiff had a right to rely on the anti-discrimination and anti-retaliation policy.  By subsequent events outlined herein, in bad faith, the Borough has breached that provision of the Settlement Agreement and the above-referenced policies rendering them empty platitudes.

15.     On or about June 13, 2013, Plaintiff began the process of submitting the required paperwork to take the promotional test for sergeant, as he possessed the years of experience required under the Bridgeport Borough Code to be promoted to the rank of sergeant. (Section 89-4)

16.     On September 24, 2013, Plaintiff received a letter of recommendation for sergeant from the Bridgeport Civil Service Commission stating that he had achieved an overall score of 92.4%. Notwithstanding this score and the fact that Plaintiff was the only one who elected to take the test, Plaintiff was not awarded the position.

17.     On November 26, 2013, Plaintiff met with Bridgeport Police Chief John Dougherty and Bridgeport Mayor Ted Pruskowski and was informed that there would be a postponement in Plaintiff's promotion to sergeant as Chief Dougherty purportedly wanted to "evaluate things".  At that time, the Mayor stated that the three of them could meet again in January of 2014 to discuss the matter further.

18.     Most of January, 2014 came and went without a reconvening of the meeting.  Chief Dougherty never approached Plaintiff to discuss the matter further.

19.     On January 21, 2014, Plaintiff emailed Chief Dougherty regarding various drug dealers names and locations, together with notification that Plaintiff, in his capacity as the

Montgomery County Drug Task Force Coordinator, had spoken with a County Narcotics Enforcement Team member who authorized surveillance and provided that Plaintiff could bring in another officer to do the job. Given Officer Shannon Sell's performance, which included having the most arrests generally for the police force as well as the most drug arrests in the past two years, Plaintiff advanced Officer Sell's name as the other officer who would be the most productive and familiar person to work the drug investigation with Plaintiff. Chief Dougherty incorrectly responded that Officer Sell was not a member of the Drug Task Force. He asked Plaintiff who else he would be using in lieu of Officer Sell. Plaintiff emailed the Chief that, in fact, Officer Sell was a member of the Task Force having been sworn in in May, 2013 in Plaintiff's presence. Notwithstanding, the Chief's response was that Plaintiff should follow his instructions to bring in someone else.

20. On January 25, 2014, Plaintiff wrote an email to Chief Dougherty stating that a certain identified subject had left a targeted drug dealer's location. Upon Plaintiff's approach the subject indicated that he knew a new Bridgeport Police officer who informed him of planned police activity. Plaintiff questioned the Chief as to how and why a Bridgeport Police officer was having a relationship with an associate of a drug dealer under investigation with a criminal history that included drugs and weapons offenses. The Chief advised Plaintiff that he would discuss this with Plaintiff in person. When the conversation did take place he summarily told Plaintiff that the police officer did nothing wrong.

21. Within a few weeks of that conversation, Chief Dougherty ordered the Plaintiff to relinquish the sole use of the office space which he had used since 2008. This office was necessary given Plaintiff's positions as Drug Task Force Coordinator, Field Training Officer and Firearms Instructor, amongst other responsibilities which included being the sole account

holder for the police department officers' bank account. Given the sensitivity of the information maintained in the office, as well as the questionable background of those designated to share the office, Plaintiff cleared out his office.

22.     Plaintiff subsequently resigned from the Drug Task Force as a result of the pressure placed upon him by the Chief.  Moreover, despite Plaintiff's accomplishments, those designated by the Chief to use Plaintiff's office were given resources by the Chief that Plaintiff had never been provided with.

23.     In the beginning of April, 2014, Plaintiff approached Chief Dougherty about the status of his promotion. The Chief's response was that he had not made a decision, derisively stating that Plaintiff would be the first to know.

24.      On July 14, 2014, the Plaintiff met with Chief Dougherty and Mayor Pruskowski regarding the sergeant's position. The Chief stated that he would rather have two corporals instead of one sergeant. He stated that Plaintiff was not sergeant material, because Plaintiff had not done enough drug work to appease him. This was despite the plethora of experience that Plaintiff had, that was well in excess of those placed in his former office.  Further, the Chief based his decision on his claim that Plaintiff, in his Firearms Instructor position, did not use the phrase the Chief wanted him to use for the weapon qualifications training that Plaintiff ran. This related to the fact that the Chief had previously changed the make of firearms to be used. The Chief had wanted Plaintiff to incorporate the phrase "Police Don't Move!" during weapons qualifications, notwithstanding the fact that  Plaintiff had undergone training from the Pennsylvania State Police that taught him that this was not a necessity. Plaintiff was open to the idea, but first wanted to secure a comfort level with the new weapon use before introducing the phrase.  The Chief also said that there were "other issues", but that he did not want to

"embarrass" the Plaintiff in front of the Mayor. This was all clearly retaliatory given the fact that Plaintiff had worked for Bridgeport for nearly 16 years at the time, in contrast to the Chief's ten month tenure during which he never once came out and worked one of Plaintiff's regularly scheduled shifts so as to observe Plaintiff's activities.

25. On July 22, 2014, Plaintiff was called in to Chief Dougherty's office and was given a written disciplinary write up for talking with a Bridgeport Council member and her husband at the Bridgeport Wawa Store, who had long been acquaintances of Plaintiff's. This was a location that the Chief had previously highlighted for patrols. The Chief also claimed that Plaintiff was falsifying his daily log in that Plaintiff was not correct when it came to labeling his time in and out of the station. This was clearly in retaliation for Plaintiff's telling the Chief that he would be seeking legal advice after the Chief had pressured Plaintiff to withdraw his name from the sergeant's position while claiming that Plaintiff could reapply for a corporal position. Plaintiff refused and stated that if he was not acceptable for the one position, he could not understand why he would he be acceptable for the other.

26. It is clear that this behavior of the Chief's, supported by the officials of the Borough was in retaliation from Plaintiff's support for the rights of Shannon Sell who has been constantly subjected to discrimination by the Chief and the Borough officials since the time of the Chief's appointment. Plaintiff's work environment can only be described as a hostile and retaliatory environment given his support for Officer Sell's rights. Chief Dougherty has specifically criticized Plaintiff for casting his lot with Officer Sell. At the same time, others with inferior experience and backgrounds have been better treated than Plaintiff when it comes to discipline, conditions of employment, perks and promotional opportunities. Actions described hereinabove with respect to Plaintiff can only be described as constituting "protected

behavior". Plaintiff complained about his situation to his superiors, including Borough Manager Don Curley. Moreover, the Mayor and Council were aware of Plaintiff's situation and did nothing to rectify it.

27. On March 16, 2015, Plaintiff received a performance evaluation from Chief Dougherty for the year 2015. In that performance review Plaintiff was told that he needed improvement in the area for "cooperation with co-workers", because he had raised the question, previously detailed herein, with respect to a police officer informing an associate of a drug dealer of police activities. There were other unwarranted attacks on Plaintiff in this performance report. The Chief prior to Chief Dougherty gave Plaintiff high marks on his reviews. Plaintiff remains a decorated police officer, decorated by the borough, county and state with a resume that far surpasses any other member of the Bridgeport police department.

28. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### COUNT I.

### RETALIATION
### IN VIOLATION OF TITLE VII

**McLaughlin vs. Borough of Bridgeport, Pennsylvania**

29. Plaintiff incorporates by reference herein Paragraphs 1 through 28 of this Complaint as though set forth here in full.

30. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq* as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of gender or sex. Shannon Sell is a female Bridgeport police officer.

31. Section 2000e-3 (a) provides that it shall be an unlawful employment practice for an employer to discriminate against any individual "because he has opposed any practice made an unlawful employment practice in this subchapter, or because he has made a charge ,testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." Plaintiff is a Borough employee who has opposed those unlawful practices by bringing charges concerning discrimination and retaliation against him.

32. Based upon the foregoing facts, Defendant has retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.

33. As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages suffered by him as a consequence of Defendant's illegal conduct.

34. As described herein, the unlawful practices by Defendant were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the laws of the United States, as well as the laws of the Commonwealth of Pennsylvania enabling Plaintiff to awarded punitive damages.

35. These unlawful acts were committed because of Plaintiff's being retaliated against as a result of his protected behavior in opposing Defendant's discriminatory practices when it came to officer Shannon Sell and his instituting proceedings before the EEOC which resulted in a "Right to Sue" letter enabling him to file this action.

36. The effect of the aforementioned practices has been to deprive Plaintiff of equal employment opportunities and adversely affect his status as an employee.

## COUNT II.

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

### McLaughlin vs. Borough or Bridgeport, Pennsylvania

37.     Plaintiff realleges paragraphs 1 to 36 and incorporates them by reference as though set forth here in full.

38.     This claim arises under the Pennsylvania Human Relations Act ("PHRA"). The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

39.     Section 5(d) thereof makes it unlawful for any person or employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

40.     Plaintiff engaged in protected activity pursuant to Section 5(d) referenced above.

41.     Bridgeport officials and his superiors were aware of his protected activity.

42.     Subsequent to and as a result of his protected activity, Plaintiff was subjected to repeated adverse employment action that was serious enough to change his compensation, terms, conditions, or privileges of employment

43.     Plaintiff is in a protected class because of his status as someone who has opposed sex discrimination by the Borough directed at Officer Shannon Sell and has been retaliated against and deprived of his rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. seq.*

44. As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things the consequences thereof suffered by Plaintiff as a consequence of Defendant's illegal conduct.

## COUNT III.

## VIOLATION OF THE PENNSYLVANIA COMMON LAW

### McLaughlin vs. Borough or Bridgeport, Pennsylvania

45. Plaintiff realleges paragraphs 1 to 44 and incorporates them by reference as though set forth here in full.

46. As cited herein before, Rules and Regulations for the Bridgeport Police Department as well as the Bridgeport Borough Code speak to a purported lack of tolerance for discrimination or the hostile environment that is attendant thereto, protecting employees from retaliation.

47. Plaintiff has a right to rely on such rules and regulations as well as pertinent provisions of the Bridgeport Borough Code.

48. Pennsylvania law recognizes a cause of action for breach of contract or quasi-contract as a result of the interaction between the parties.

49. The interaction described hereinabove, including but not limited to Plaintiff's qualifying for the position of sergeant were agreed to and relied upon by Plaintiff.

50. As a result of breach of such rules and regulations as well as pertinent Bridgeport Borough Code sections by Defendant, Plaintiff's contractual or quasi-contractual rights have been breached.

**RELIEF REQUESTED**

51.     Plaintiff restates and realleges paragraphs 1 through 50 as though set forth here in full.

52.     This civil action seeks on behalf of Plaintiff, legal and equitable relief including:

a.  Back and front pay for Plaintiff and payment of compensatory damages and punitive damages, together with attorney's fees and the costs of suit to Plaintiff in excess of $150,000, in an amount to be determined at trial for each of his Federal and State civil rights counts pursuant to federal and Pennsylvania civil rights statutes.

b.  Payment of compensatory and punitive damages together with attorneys fees and the costs of suit to Plaintiff for the harm suffered by Plaintiff as a result of Defendant's behavior.

c.  An Order directing Defendant to place Plaintiff in the position of Sergeant with back pay going forward from the date that Plaintiff qualified for the position.

d.   Such other and further relief as the Court may deem just and proper.

e.  Retention of jurisdiction by this Court until such time as the Court is satisfied that Defendant has remedied the practices complained of herein and is determined to be in full compliance with the law.

**JURY DEMAND**

The Plaintiff demands trial by jury of all issues triable of right to a jury.


Dated: August 20, 2015                    /s/Mark D. Schwartz
                                          Mark D. Schwartz, Esquire
                                          P.O. Box 330
                                          Bryn Mawr, PA  19010-0330
                                          Telephone & Fax: 610 525-5534

                    Email: MarkSchwartz6814@gmail.com
                    Pa. I.D. #30527

                    Attorney for Plaintiff, Paul McLaughlin